Good morning, your honors. I'm Victor Haltom, appearing on behalf of Mark Parker in this appeal. During the trial in this case, there were two key witnesses for the government, Mark Dixon, who was an informant, and Kenya Gattison, who is Mr. Parker's ex-wife. The district court committed fundamental damaging errors in connection with the testimony of both of these two key witnesses. With respect to Mr. Dixon, the informant, the two key witnesses, I would like to ask Mr. Haltom to come to the podium and give us an overview of the case. The district court, after allowing trial counsel to elicit evidence concerning the sentencing benefits conferred by the government upon him for his cooperation with the government, the district court instructed the jury, that evidence you just heard regarding those sentencing issues is, quote, completely irrelevant, unquote. That instruction was erroneous, and it violated principles established by this court's decision in United States v. Larson, and it violated principles established by the U.S. Supreme Court decision in Davis v. Alaska and Davis' progeny. In connection with Kenya Gattison, the other key witness, the district court committed, over repeated objections from defense counsel, a series of errors by allowing Ms. Gattison to make statements to the jury, give testimony to the jury, concerning a series of extrajudicial statements, extrajudicial statements that were damaging to Mr. Parker. Now, those extrajudicial statements should have been excluded under the hearsay rule, because a lot of it was just rank hearsay. She flat-out said it was beauty shop gossip. And then other components of the statements were covered by and should have been excluded by the marital communication privilege. However, all of that evidence was allowed to come in. Turning to the conspiracy charge, which I've, in its argument number three in the opening brief and in the reply brief, I cite to this court's decision in Lennox. The government's evidence in this case established nothing more between Mr. Parker and Mr. Dixon than a buyer-seller relationship. And there was no other evidence of the conspiracy charge in this count, even though it was a five-year-long window, 1999 to 2004. The only evidence was transactions, sales from Mr. Parker to Mr. Dixon. And that was it. There was no agreement of any type of further distribution by Mr. Dixon. It was simply a buyer-seller relationship. So it seems fairly clear that this is a square fit for application of the buyer-seller rule in the Lennox case. Turning to the sentencing issues in this case, I have cited and briefed the Fair Sentencing Act and the U.S. Supreme Court's decision in Dorsey. In this case, the, well, generally, the Fair Sentencing Act went into effect in August of 2010. Mr. Parker was sentenced in May of 2011. The district court, however, determined that at that time the FSA is not retroactive. So the district court did not apply the FSA to Mr. Parker at sentencing. Then, of course, the Supreme Court, after sentencing, decides Dorsey. Dorsey makes clear that contrary to what the district court did in this case, the FSA is retroactive. The application of the FSA in this case is germane with respect to all three counts of conviction. As to count one, there was a 50-gram finding by the jury. As to count two, a 5-gram finding. And as to count three, another 50-gram finding. Of course, the FSA used to have that for the 10-year mandatory minimum, the 50-gram threshold. For the 5-year mandatory minimum, the ---- My error is this. There you go. My apologies. And worse is the solicitation. Thank you, Your Honor. But anyway, the point was, is that as to those 10-year and 5-year mandatory minimums, the numbers were moved up, and in a manner that helps Mr. Parker. Well, he was sentenced within the guideline range, though, right, on these? I mean, I guess the question is, is the error ---- Explain to me why it's not a harmless ---- why the error isn't harmless. The sentencing error, Your Honor? Yes. Well, first of all, the guideline sentence in this case was determined principally by a drug quantity determination made by probation. In this case, probation determined that there was approximately 5.5 kilos of cocaine involved over the life of the conspiracy. I think your judge, Thomas, was asking, maybe I misunderstood his question, but does the Fair Sentencing Act change the guideline range? It just changes the mandatory minimum. It didn't change the guideline range, isn't that ---- That's correct. Why isn't that harmless is what I asked. Well, because for a number of the other reasons that have been identified in the briefing in this case, the guideline range that was ultimately applied by the district court was incorrect. There was an incorrect drug quantity determination. Okay. That's the drug quantity calculation problem. That's not the Fair Sentencing Act, right? Correct. The argument I'm making under the Fair Sentencing Act is that he was probation found. He gets the 10-year mandatory minimum. Actually, it's 20 years because of the prior for the counts involving 50-gram findings by the jury. He's entitled to have this case, if nothing else, remanded on that sentencing issue and have an appropriate determination as to what the mandatory minimum is to have the ---- But I guess my question is, it seems to me your other argument in terms of the appropriate guideline range is certainly on the table. But if he were sentenced within the applicable guidelines, why does it make a difference in this case? If ultimately it is determined that he was sentenced within the appropriate guideline range, then I agree that would be harmless. But then we get to the ---- So it's tied to your second argument, then. I'm sorry, Your Honor. The two arguments are somewhat intertwined. They are intertwined, yes. And I ---- That's one of the problems in terms of the general Rule 32 failure in this case. Counsel at sentencing advanced an argument, Your Honor, you should apply something lower than the 100 to 1 or the 18 to 1 ratio. And the district court simply did not even address that argument. The district court simply says I adopt the findings of the PSR and I impose sentence accordingly. One other point on the sentencing, the ex post facto argument. The court gave, the district court gave Mr. Parker a two-level bump for the finding of under 2D1.1B14E for ---- I think that guideline provision went into effect in 2010 after the offense conduct. And it's a two-level bump for a finding that he engaged in drug dealing as a form of livelihood. We say he shouldn't have done that because it was ex post facto or whatever. Does that change the guideline calculation? Exactly. Would it have changed along with the other factors that are identified in the briefing? Yes, Your Honor. There's numerous guideline calculation errors that occurred in connection with the drug quantity. Here we also have this two-level bump for livelihood. We have a two-level bump for aggravating role. All of those factors were challenged but not ruled upon by the district court. Okay. So that's four levels which you've just identified just now. If we had, if those four levels are struck, what would the guideline range have been? Before I answer, right off the top of my head I don't know the number. My impression is it's still 360 to life. Is that? It very well could be. And the main point in terms of guideline error, I guess the, maybe not main point, but the guideline error that had the greatest impact was the drug quantity determination. And everything really hinges on that as far as your argument goes. If we just get down to sentencing in this case, yes. And also did the record in this case does not even show that the district court was aware that it had discretion to do something other than applying a 18 to 1 crack cocaine to powder cocaine sentencing ratio. And that was a point that was expressly raised by trial counsel. And I think under Rule 32, the district court was required to at least address that. So unless the court has further questions, I'm prepared to submit and save the rest of my time for rebuttal. All right. Thank you. Good morning, Your Honors. My name is Jason Hitt. I'm an assistant United States attorney, in this case representing the United States. I want to briefly respond to some of the issues raised by the Court. And first, Judge Thomas is exactly correct. On the FSA issue, there is no error. If there's error, it's harmless. And the sense is that even if you take the defendant's drug estimate, take count one and the mandatory minimum that applies to the conspiracy count, in his brief he comes up with a calculation that arrives at over a kilo of crack cocaine. The mandatory minimum under the FSA for count one would still be what Mr. Parker faced. That is 20 to life. Because under FSA, 280 grams triggers the 10, plus the prior makes it 20. So there is no scenario that the defense presents to the Court where error is found under the FSA issue. Similarly, Judge Silverman also pointed out that the application of the criminal livelihood, if the ex post facto issue is ruled upon and found that the district court erred, it still is a 40, offense level 40 category Roman IV guideline of 360 to life. In fact, there are very few scenarios under which it's possible to get below 360 to life. And as we argue in the brief, the Court's sentence in this case was clearly grounded in the Section 3553 factors. The Court sat through trial, was impressed by the defendant's conduct, and said that it was an extremely serious, extremely serious set of circumstances. He noted the large quantity of crack cocaine. He did note that he had the guidelines were advisory and merely a starting point. And he also noted that Parker's flight from law enforcement at a high rate of speed recklessly endangered both police and citizens and ended in an accident, that Mr. Parker violently attempted to resist arresting officers, and that, in fact, the Court's own view of Mr. Parker's criminal history as only scoring out as a Roman IV perhaps understated the serious history and characteristics of crime that Mr. Parker had engaged in. In terms of the actual errors assigned based upon Rule 32, as we argue in the brief, the district court substantially complied with Rule 32, and the Court is not required to go through each and every issue raised. And in the sentencing excerpts of record, the court did say on page 4, the objections are noted and also the responses that were given to those objections, and the Court will now adopt the statements and material facts, sentencing classification, advisory guidelines, and or policy statements and determine them to be true and correct. During the same sentencing hearing a little later on pages 11 and 12 of the excerpts of record, the Court made clear why it was finding that the PSR's accurate statement of facts was going to be adopted, and the Court said this is one of the times when the Court has the opportunity in sentencing to call upon its own recollection and memory of certain facts and situations. A little later, the Court said the Court went through a very involved jury trial, and a jury trial where the defendant was convicted on all counts. The Court had the opportunity to view all of the witnesses who testified and to understand and appreciate the impact that not only the conduct of the defendant had on the community as a whole, but also specifically what effect it had with regard to the chase in which he was apprehended. For those reasons, Your Honors, we submit that the district court clearly understood its sentencing discretion, used the 3553 factors appropriately, and imposed a sentence of 360 months. I would urge the Court to affirm the convictions and sentence, and I will submit on the briefs unless the Court has specific questions or issues you'd like me to address. Any further questions? Thank you, Your Honors. Your Honors, in light of those comments, unless the Court has any questions for me, I'm prepared to submit the matter as well. All right. Thank you so much for your presentation. My apologies for the cell phone. I would eject myself, and I wouldn't have heard your case.
judges: Schroeder, Thomas, Silverman